UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| VALNA HOLDING CYPRESS LTD,<br>Petitioner,<br>v.<br>BIBO BIOPHARMA ENGINEERING COMPANY LTD., et al.,<br>Respondents. | Case No. 25-cv-03328-KAW<br><br>**ORDER RE MOTION FOR ALTERNATIVE SERVICE**<br><br>Re: Dkt. No. 20 |

Petitioner Valna Holding Cypress Ltd. filed this action against Defendants BiBo Biopharma Engineering Company Ltd. ("BiBo Biopharma"), BiBo Pharma Scientific Company Ltd. ("BiBo Pharma"), and BiBo Biopharma Engineering Co., Ltd. ("BiBo Biopharma MA"), seeking to confirm an arbitration award. (Amend. Pet., Dkt. No. 15.) On October 17, 2025, Petitioner filed a motion for alternative service as to Defendant BiBo Biopharma, specifically by serving third-party 89bio, Inc. ("89bio"). (Mot. for Alt. Service, Dkt. No. 20.)

The Court previously found this matter suitable for disposition without a hearing pursuant to Civil Local Rule 7-1(b). (Dkt. No. 21.) Having considered the filings and relevant legal authorities, the Court DENIES Petitioner's motion for alternative service.

## I.   BACKGROUND

Beginning in September 2022, Petitioner and Respondents BiBo BioPharma and BiBo Pharma attended an arbitration before the London Court of International Arbitration pursuant to a 2021 business agreement. (Amend. Pet. ¶ 1.) On April 10, 2024, the arbitrator issued a final award, requiring that Respondents BiBo BioPharma and BiBo Pharma pay $3 million, as well as pre-award interest of $175,808.22 and post-award interest at the rate of 3% per annum. (Amend. Pet. ¶ 15.) On July 24, 2024, the arbitrator issued a cost award, requiring that Respondents BiBo

1  BioPharma and BiBo Pharma pay €1,133,963.71 in legal costs and expenses and £7,037.17 in

2  arbitration costs, as well as post-award interest in the rate of 3% per annum.  (Amend. Pet. ¶ 15.)

3  On April 14, 2025, Petitioner filed this action to have the arbitral awards confirmed.

4        On October 17, 2025, Petitioner filed the instant motion to serve Respondent BiBo

5  Biopharma -- a Chinese company -- by serving non-party 89bio.  (Mot. to Serve at 3.)  89bio is

6  incorporated in Delaware and has its principal place of business in San Francisco, California.

7  (Geng Decl., Exh. B ("SEC Quarterly Report").)  89bio is a clinical-stage biopharmaceutical

8  company focused on the development and commercialization of therapies, with its lead product

9  candidate being pegozafermin.  (SEC Quarterly Report at 6.)  In April 2024, 89bio entered into a

10  collaboration agreement with BiBo Biopharma, under which BiBo Biopharma would construct a

11  production facility in China to enable the production of the bulk active ingredient required to

12  produce pegozafermin at a commercial level.  (*Id.* at 11.)  Under the agreement, 89bio committed

13  $175 million for the construction of the production facility.  (*Id.*)  In short, 89bio views BiBo

14  Biopharma as a "primary source supplier."  (*Id.* at 32.)

## II.    DISCUSSION

16  "The Federal Rules of Civil Procedure permit service upon a corporation within the United

17  States as prescribed by the law of the forum state or the state in which service is made."  *United*

18  *States ex rel. Miller v. Pub. Warehousing Co. KSC*, 636 Fed. Appx. 947, 948 (9th Cir. 2016).  As

19  relevant here, California law "permits service upon a corporation by delivering a copy of the

20  summons and the complaint to 'a general manager' of the corporation."  *Id.* (quoting Cal. Code of

21  Civil Proc. § 416.10(b).)  Relatedly, "California Corporations Code § 2110 permits service of

22  process upon a foreign corporation transacting business in California by serving 'its general

23  manager in this state.'  The term 'general manager' is not defined in either statute."  *Id.*

24        Here, Petitioner asserts that 89bio is a "general manager" pursuant to *Cosper v. Smith &*

25  *Wesson Arms Co.*, 53 Cal. 2d 77 (1959).  There, the California Supreme Court considered whether

26  service was completed on Defendant Smith and Wesson, Inc. ("S&W") by serving Walter K.

27  Lookabaugh, "the alleged agent, sales manager and manufacturer's representative for [S&W]."  *Id.*

28  at 79.  S&W was not qualified to do business in California, and had no offices, property, agents,

salesmen, or employees in California, instead distributing its product through wholesale and dealer channels. *Id.* at 80. S&W, however, did have contracts with manufacturer's representatives such as Lookabaugh, who had a non-exclusive contract to promote the sale of S&W's products by using advertising material furnished by S&W, servicing dealer accounts, investigating and recommending prospective dealers to S&W, arranging publicity, and handling and reporting on complaints concerning defects in S&W's products. *Id.* at 80-81.

The California Supreme Court found that service through Lookabaugh was adequate, considering two factors. First, the validity of the service was dependent "on whether the foreign corporation is 'doing business in this State' within the meaning of the statute," *i.e.*, whether the corporation had "minimum contacts" such that "the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Cosper*, 53 Cal. 2d at 82 (internal quotation omitted). The California Supreme Court found that S&W's use of Lookabaugh to promote sales, service dealer accounts, and distribute its advertising material constituted a sufficient regular course of business dealings within the state because such services effectively gave S&W "the benefits and advantages it would have enjoyed by operating through its own office or paid sales force." *Id.* at 82-83. The California Supreme Court further found that it was "not inconsistent with traditional notions of fair play and substantial justice" because the plaintiff resided in California, the accident at issue in the suit occurred in California, and the witnesses who would be called at trial were in California. *Id.* at 83.

Second, the validity of service required a finding as to whether Lookabaugh was a "general manager in this State" for S&W, which required a finding that "the agent served is of sufficient character and rank to make it reasonably certain that the defendant will be appraised of the service made." *Cosper*, 53 Cal. 2d at 83. In making this determination, the California Supreme Court found that "the essential factor is that Lookabaugh in his selling and advertising activities was performing services for [S&W] and providing it with the opportunity for regular contact with its customers and a channel for a continuous flow of business into the state." *Id.* at 84. Again, because the arrangement between Lookabaugh and S&W gave S&W "the business advantages it would have enjoyed if it conducted its business through its own offices or paid agents in the

state[,] such arrangement was sufficient to constitute Lookabaugh 'the general manager in this State' for purposes of service of process on [S&W]." *Id.*

Having carefully considered the facts of *Cosper*, the Court finds that it is not applicable in this case. The relationship between Respondent BiBo Biopharma and 89bio is nothing like that of S&W and Lookabaugh; whereas Lookabaugh worked on behalf of S&W to promote and sell S&W's products to California customers, 89bio is collaborating with Respondent BiBo Biopharma to build a factory in China so that 89bio can be supplied with the active ingredient needed for 89bio to produce its own product. While Petitioner appears to suggest that Respondent BiBo Biopharma contracted with 89bio to transport pharmaceuticals to California for sale in California, or that 89bio is "repackaging" Respondent BiBo Biopharma's chemicals, Petitioner provides no evidence in support. (Mot. for Alt. Service at 8, 10 n.5.) Rather, the evidence before the Court -- namely 89bio's SEC report -- makes clear that Respondent BiBo Biopharma is effectively a supplier of raw material to 89bio. (Mot. for Alt. Service at 8; SEC Quarterly Report at 6, 11, 32.) Thus, 89bio is not Respondent BiBo Biopharma's agent or representative responsible for handling customers in California; instead, 89bio appears to *be* Respondent BiBo Biopharma's customer, buying the active ingredient to produce its own products. The arrangement between 89bio and Respondent BiBo Biopharma does not provide Respondent BiBo Biopharma with the business advantages it would have enjoyed if it conducted its business through its own office because there is no suggestion Respondent BiBo Biopharma would be selling the active ingredient for pegozafermin directly to California customers, nor does it appear that 89bio provides regular contact between Respondent BiBo Biopharma and Respondent BiBo Biopharma's "customers" (other than 89bio itself). Thus, the Court finds that 89bio is not a "general manager" for Respondent BiBo Biopharma.

Plaintiff has identified no legal authority finding that *Cosper* applies to facts similar to this case. Rather, the cases cited by Plaintiff have concerned foreign corporations and their domestic subsidiaries, with the subsidiary company being responsible for distributing the parent company's product in California and/or providing customer service to California customers. *See Yamaha Motor Co. Ltd. v. Super. Ct.*, 174 Cal. App. 4th 264, 271, 274 (2009) (finding that Yamaha-

4

America was a general manager for Yamaha-Japan because Yamaha-America had an exclusive arrangement to sell the manufacturer's products, provide warranty service and English owner manuals, do testing and marketing, and receive complaints about the manufacturer's products); *Halo Elecs., Inc. v. Bel Fuse Inc.*, No. C-07-6222-RMW, 2010 U.S. Dist. LEXIS 64025, at *7-8 (N.D. Cal. June 14, 2020) (finding that the defendant's wholly-owned subsidiary was a general manager because it acted as a liaison between United States customers and the parent company); *Hatami v. KIA Motors Am., Inc.*, 2008 U.S. Dist. LEXIS 89909, at *2, 6 (C.D. Cal. Oct. 29, 2008) (finding that Kia Motors America was a general manager for Kia Motor Company because it was the U.S. distributor for automobiles designed and/or manufactured by Kia Motors Company); *Falco v. Nissan N. Am., Inc.*, 987 F. Supp. 2d 1071, 1077 (C.D. Cal. 2013) (finding that Nissan-Japan's wholly-owned domestic subsidiary Nissan-America was a general manager because Nissan-America was the sole authorized distributor of Nissan vehicles in America); *Syscom USA Inc. v. Nakajima USA, Inc.*, No. CV1407137ABJPRX, 2020 U.S. Dist. LEXIS 164859, at *17-18 (C.D. Cal. Jan. 29, 2020) (finding that the defendant's subsidiaries were "general managers" because the defendant created the subsidiaries to sell its Sanrio products in the United States). While a parent-subsidiary relationship is certainly not required (as made clear in *Cosper*), these cases are consistent in requiring that the "general manager" play a significant role **on behalf** of the defendant-party in reaching out to California customers. In contrast, the evidence shows that 89bio does not do any such work on behalf of Respondent BiBo Biopharma. 89bio's contract with Respondent BiBo Biopharma to build a company in China to produce "primary material" needed by 89bio to produce its own product does not make it Respondent BiBo Biopharma's "general manager."

### III.     CONCLUSION

For the reasons stated above, the Court DENIES Petitioner's motion for alternative service.

IT IS SO ORDERED.

Dated: December 22, 2025

_____
KANDIS A. WESTMORE
United States Magistrate Judge